UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                     )
BRIAN CAVITT,                        )
                                     )
            Petitioner,              )
                                     )        CIVIL ACTION
        v.                           )        No. 1:12-cv-11700-WGY
                                     )
JAMES SABA, Superintendent,          )
                                     )
            Respondent.              )
_____)


YOUNG, D.J.                                    October 31, 2014

                    MEMORANDUM AND ORDER


I.    INTRODUCTION

      Brian Cavitt ("Cavitt") brings this pro se petition seeking

a writ of habeas corpus pursuant to 28 U.S.C. section 2254

("section 2254").  Pet. 28 U.S.C. § 2254 Writ Habeas Corpus

Person State Custody ("Pet."), ECF No. 6.  Cavitt presents four

grounds for relief: (1) whether the "[j]udge erred in denying

[a] motion for new trial where trial counsel failed to pursue

suppression of a pair of sneakers, notwithstanding a lack of

probable cause for search and seizure," id. at 6; (2) whether

the "[j]udge erred in denying [a] motion to suppress evidence

where the search warrant affidavit was not supported by probable

cause because the veracity of an 'unknown' citizen informant was

                              1

not adequately demonstrated," id. at 8; (3) whether the "[j]udge erred in denying [a] motion to suppress a photographic identification made [by] a 13[-]year-old witness that was a result of undue suggestion by police," id. at 9; and (4) whether the "[j]udge erred in allowing [the] introduction of inconclusive [DNA] evidence [without] the requisite explanatory statistical support," id. at 11. James Saba ("Saba"), Cavitt's immediate custodian, opposes the petition in its entirety. Resp't James Saba's Mem. Opp'n Brian Cavitt's Pet. Writ Habeas Corpus ("Saba's Opp'n"), ECF No. 35.

## A. Procedural Posture

Cavitt filed his petition for a writ of habeas corpus on October 9, 2012, raising eight grounds for relief. Pet. Saba moved to dismiss the petition for failure to exhaust state court remedies on four of the eight grounds on December 3, 2012. Resp't's Mot. Dismiss Failure Exhaust State Ct. Remedies, ECF No. 13. On January 7, 2013, the Court granted the motion and entered an order of dismissal. Order, ECF No. 15; Order Dismissal, ECF No. 16. Cavitt moved for reconsideration and asked the Court for permission to withdraw his unexhausted grounds for relief, Mot. Recons. Habeas Corpus Pet., ECF No. 17, and on January 31, 2013, the Court entered the following order: "Upon reconsideration ground[s] 5-8 are unequivocally waived and

2

the case may proceed on counts 1-4 alone." Elec. Order, Jan. 31, 2013, ECF No. 18.

On February 15, 2013, Saba presented his answer to the habeas petition. Resp't's Answer, ECF No. 25. On October 21, 2013, Cavitt filed a memorandum of law in support of his petition. Pet'r's Mem. Law Supp. Pet. Habeas Corpus ("Cavitt's Mem."), ECF No. 32. Saba then filed his opposition on December 12, 2013, Saba's Opp'n, to which Cavitt replied one week later, Pet'r Brian Cavitt's Reply Resp't James Saba's Mem. Opp'n Pet'r's Pet. Writ Habeas Corpus, ECF No. 36.

## B. Facts[1]

On May 5, 2006, a man, later identified as Cavitt, robbed a Western Union office located inside a supermarket in Springfield; the same day, fire officials investigating smoke coming from a nearby housing complex discovered the bodies of a man and a woman who had been stabbed to death. Commonwealth v. Cavitt, 460 Mass. 617, 618, 620 (2011). On June 30, 2006, a grand jury returned indictments against Cavitt for two counts for murder, and one count each for arson of a dwelling house, armed robbery while masked, assault and battery, and carjacking.

---

[1] The Court relies on the factual background set out by the Massachusetts Supreme Judicial Court's opinion addressing Cavitt's direct appeal and subsequent motion for a new trial. Commonwealth v. Cavitt, 460 Mass. 617 (2011). These facts are presumed to be correct under 28 U.S.C. § 2254(e)(1). See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002).

Id. at 618; Saba's Opp'n 2.  On February 1, 2007, Cavitt filed a
motion to suppress evidence – a pair of sneakers – seized by the
police during a search of the apartment where he was staying and
a motion to suppress two photographic identifications.  Cavitt,
460 Mass. at 618; Saba's Opp'n 2.  The Massachusetts Superior
Court denied both motions on June 14, 2007.  Cavitt, 460 Mass.
at 618; Saba's Opp'n 2.

On December 11, 2007, a jury found Cavitt guilty of both
charges of murder in the first degree on theories of deliberate
premeditation, extreme atrocity or cruelty, and felony murder;
they also found him guilty of the charges of arson of a dwelling
house, armed robbery while masked, and assault and battery,
while finding him not guilty on the carjacking charge.  Cavitt,
460 Mass. at 618; Saba's Opp'n 2.  Judge Carhart then sentenced
Cavitt to serve two consecutive terms of life in prison, a term
of ten to fifteen years in prison concurrent with the first life
sentence, a term of twenty to twenty-five years after the second
life sentence, and a term of two years concurrent with the first
life sentence.  Saba's Opp'n 2-3.

Three days later, Cavitt filed a motion to revise and
revoke his sentence, but it was denied on January 7, 2008.
Saba's Opp'n 3.  After filing a timely notice of a direct
appeal, Cavitt also filed a motion for a new trial, "alleging
ineffective assistance of trial counsel based on counsel's

failure to pursue the suppression of evidence." <u>Cavitt</u>, 460

Mass. at 618.  Judge Carhart denied the motion on July 22, 2010.

<u>Id.</u>; Saba's Opp'n 3.  Cavitt's appeal from the denial of his new

trial motion was then consolidated with his direct appeal, and

on September 21, 2011, the Massachusetts Supreme Judicial Court

affirmed the convictions and the denial of the new trial motion.

<u>Cavitt</u>, 460 Mass. at 618-19, 636.  Finally, on October 9, 2012,[2]

Cavitt filed this petition for a writ of habeas corpus.  Pet.

## II.  ANALYSIS

### A.  Standard of Review - Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act

("AEDPA"), "habeas corpus review of claims previously

adjudicated in state court is both limited and highly

deferential."  <u>Evans</u> v. <u>Thompson</u>, 465 F. Supp. 2d 62, 66 (D.

Mass. 2006), <u>aff'd</u>, 518 F.3d 1 (1st Cir. 2008); <u>see also</u> <u>Johnson</u>

---

[2] Although Cavitt's petition was filed one year and eighteen
days after the Supreme Judicial Court's opinion, it still
is timely under 28 U.S.C. § 2244(d)(1)'s one-year limitation on
habeas petitions: the one-year clock started running not at the
time the Supreme Judicial Court entered its judgment, but at the
end of the 90-day period when Cavitt could have petitioned the
U.S. Supreme Court for a writ of certiorari.  <u>See</u> 28 U.S.C. §
2244(d)(1)(A) (stating that the one-year limit runs from "the
expiration of the time for seeking [direct] review"); Sup. Ct.
R. 13 (stating that petitions for the writ of certiorari must be
filed within ninety days of entry of judgment); <u>Lawrence</u> v.
<u>Florida</u>, 549 U.S. 327, 330 (2007) (calculating one-year period
from the date the Supreme Court denied certiorari).

v. <u>Dickhaut</u>, 308 F. App'x 454, 456 (1st Cir. 2009).  More

specifically:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the
> claim-- (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in
> a decision that was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This 'highly deferential standard for

evaluating state-court rulings' reflects the overarching

structure of the federal habeas corpus scheme, which vests

'primary responsibility' for evaluating federal law claims

raised in criminal trials in the state courts," on the

presumption that state courts know and follow federal law.

<u>Evans</u>, 465 F. Supp. 2d at 66 (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537

U.S. 19, 24, 27 (2002)).

Accordingly, "[u]nder current Supreme Court precedent,

habeas relief is not warranted if the state court's decision was

merely erroneous or incorrect."  <u>Id.</u> (citing <u>Woodford</u>, 537 U.S.

at 27; <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 412-13 (2000)).  As a

consequence of this high standard, it is not enough "that the

state court 'failed to apply' clearly established Supreme Court

law, or that the state court committed 'clear error,' or that

the reviewing court is of the 'firm conviction' that the state court's ruling was erroneous." <u>Id.</u> (citations omitted).

Thus, the habeas petitioner bears the burden of showing "that his claim falls into one of the narrow categories set forth in [section 2254(d)]." <u>Id.</u> at 66-67. The first category regards decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law."[3] 28 U.S.C. § 2254(d)(1). As this Court has previously analyzed,

> "Under the 'contrary to' clause, a federal habeas
> court may grant the writ if the state court arrives at
> a conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court
> has on a set of materially indistinguishable facts."
> <u>Williams</u>, 529 U.S. at 412-13. The analysis under the
> "unreasonable application" clause makes relief
> available only if "the state court identifies the
> correct governing legal principle from [the Supreme]
> Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case." <u>Id.</u>
> at 413. The application of a legal rule will be
> deemed unreasonable if there is "some increment of
> incorrectness beyond error" that is "great enough to
> make the decision unreasonable in the independent
> objective judgment of the federal court." <u>Norton</u> v.
> <u>Spencer</u>, 351 F.3d 1, 8 (1st Cir. 2003).

<u>Evans</u>, 465 F. Supp. 2d at 67 (alterations in original).

**B.    Standard of Review – Ineffective Assistance of Counsel**

In <u>Strickland</u> v. <u>Washington,</u> 466 U.S. 668 (1984), the Supreme Court set forth the two-part test for a claim of ineffective

---

[3] Because Cavitt does not challenge the state court decision under the "unreasonable determination of the facts" standard of section 2254(d)(2), the only relevant provision for the present case is the one contained in section 2254(d)(1).

assistance of counsel.  The so-called Strickland prongs demand

from the petitioner a showing that: (1) counsel's representation

fell below an objective standard of reasonableness, and (2)

prejudice resulted from this error.  Id. at 688-92; see also

Hallums v. Russo, 491 F. Supp. 2d 161, 165 (D. Mass. 2007).

Under the first prong, a petitioner must show that counsel

has failed to employ "such skill and knowledge as will render

the trial a reliable adversarial testing process." Scarpa v.

DuBois, 38 F.3d 1, 8 (1st Cir. 1994) (quoting Strickland, 466

U.S. at 688) (internal quotation marks omitted).  Under the

second prong, the petitioner must demonstrate a "reasonable

probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine

confidence in the outcome." Strickland, 466 U.S. at 694.

In order to avoid the distorting effects of hindsight, the

reviewing court's scrutiny of counsel's performance must be

highly deferential.  "Because of the difficulties inherent in

making the evaluation, a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

professional assistance[.]" Id. at 689; see also Pagan v.

Dickhaut, 578 F. Supp. 2d 343, 358 (D. Mass. 2008) (applying the

Strickland prongs and noting that "counsel's strategic choices

are considered reasonable to the extent that they were based on

reasonable investigation by the attorney"). Finally, "[t]he court must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Tibbs</u> v. <u>Allen</u>, 486 F. Supp. 2d 188, 194 (D. Mass. 2007) (quoting <u>Strickland</u>, 466 U.S. at 690).

When a <u>Strickland</u> claim is raised on habeas review, the reviewing court must layer two deferential standards: "the AEDPA standard and the underlying standard applying the constitutional right asserted." <u>Garcia</u> v. <u>Roden</u>, 672 F. Supp. 2d 198, 204 (D. Mass. 2009); <u>see also</u> <u>Hurtado</u> v. <u>Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001) ("The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.").

## C. Cavitt's Grounds for Relief

### 1. Ground One

In his first ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion for new trial where trial counsel failed to pursue suppression of a pair of sneakers, notwithstanding a lack of probable cause for search and seizure." Pet. 6. According to Cavitt, "[n]owhere in the warrant or accompanying affidavit does it describe what articles of clothing were to be seized . . . . Furthermore, the warrant requests 'footwear impressions,' not 'footwear.'" Cavitt's Mem.

9

2.  In short, this ground for relief is rooted in the warrant's

lack of particularity.  See id. at 3.  Moreover, Cavitt claims

ineffective assistance of counsel, because, "had [the] trial

attorney refiled a motion to suppress evidence, including red

[and] white sneakers, on the grounds that the warrant and

affidavit supporting [the] warrant [lacked particularity] to

show probable cause, trial counsel would ha[ve] been

successful."  Id. at 6.

About this topic, the Massachusetts Supreme Judicial Court

concluded as follows:

> Based on our review of the four corners of [the
> affidavit supporting the warrant in question], we
> conclude that it set forth probable cause to search
> [the apartment where Cavitt was staying] for items of
> [Cavitt]'s clothing, including his red and white
> sneakers.  It follows, therefore, that the seizure of
> the sneakers did not exceed the scope of the search
> warrant.  Contrary to [Cavitt]'s argument, his trial
> counsel was not ineffective for failing to seek
> suppression on this basis.  Further, in light of our
> conclusion, the fact that defense counsel did not
> renew his motion to suppress or file a motion for
> reconsideration after [the female stabbing victim]'s
> DNA was found on [Cavitt]'s sneakers did not
> constitute ineffective assistance where the sneakers
> were properly seized in the first instance.

Cavitt, 460 Mass. at 627-28.

The state court's conclusion is not contrary to clearly

established federal law, nor did it involve an unreasonable

application thereof.  After laying out the proper standards for

a finding of probable cause on a search warrant,[4] the court noted

that "the information contained [in the affidavit] supports a

conclusion that there was a nexus between the armed robbery . .

. and the sneakers seized from LaVoice's apartment." Id. at

626.  The court also noted that the affidavit contained

information provided by the apartment's owner, Corrine LaVoice,

who identified Cavitt, her boyfriend's brother, and linked him

to the crimes.  Id. at 627.  As a result, the court found "there

was a substantial basis for concluding that the clothes that

[Cavitt] did not discard, including footwear, would be found at

LaVoice's apartment."  Id.  Furthermore, the court observed that

"[i]n light of the altercation between [Cavitt] and [a witness],

it was reasonable to infer that trace evidence, including blood,

tissue, or fragments of clothing, may have transferred between

the men, including onto their shoes, and that such evidence

---

[4] The court observed: "The Fourth Amendment to the Federal
Constitution and art. 14 of the Massachusetts Declaration of
Rights both require a magistrate to determine that probable
cause exists before issuing a search warrant.  Probable cause
requires a substantial basis for concluding that the items
sought are related to the criminal activity under investigation,
and that they reasonably may be expected to be located in the
place to be searched at the time the search warrant issues.
Review of the sufficiency of the search warrant application
begins and ends with the four corners of the affidavit.  In
determining whether an affidavit justifies a finding of probable
cause, the affidavit is considered as a whole and in a
commonsense and realistic fashion; inferences drawn from the
affidavit need only be reasonable and possible, not necessary or
inescapable."  Cavitt, 460 Mass. at 626 (internal citations
omitted) (internal quotation marks omitted).

would be relevant to the identification of [Cavitt] as the perpetrator of the armed robbery." Id.

Because the affidavit laid out probable cause for a search for Cavitt's sneakers (and the seizure of those sneakers was thus within the scope of the resulting warrant), the state court concluded that Cavitt's counsel did not provide ineffective assistance by not pursuing suppression of this evidence on this ground. Id. This Court rules that this represents a reasonable application of Strickland within the meaning of section 2254.[5] Accordingly, the first ground cannot support the granting of relief in this habeas proceeding.

## 2. Ground Two

In his second ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion to suppress evidence where the search warrant affidavit was not supported by probable cause because the veracity of an 'unknown' citizen informant was not adequately demonstrated." Pet. 8. According to Cavitt, "[w]hile Corinne LaVoice wished to remain anonymous, her words were misrepresented in the affidavit for the search warrant." Cavitt's Mem. 8. Cavitt explains that "LaVoice never gave any corroborating reports of any crimes. Police officers

---

[5] Where the first Strickland prong is not met – that is to say, counsel is not found ineffective - there is no reason to move forward to the second prong, because no prejudice to the petitioner possibly could be shown.

intentionally misled the magistrate by representing the 'anonymous witness.'" Id.

This ground for relief is barred by the Supreme Court decision in Stone v. Powell, which held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 482 (1976).[6]

The First Circuit has observed that Stone "stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims," while also finding "an exception for

_____

[6] It is worth noting that, in Kimmelman v. Morrison, 477 U.S. 365 (1986), the Supreme Court cabined the application of Stone. More precisely, the Kimmelman Court rejected the "argument that Stone's restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." Id. at 382-83. Accordingly, the Supreme Court decided that federal courts may grant habeas relief in ineffective assistance of counsel claims, even when the underlying attorney error relates to unconstitutional search and seizure. Id. at 383. The distinction is relevant in the present case, explaining why Cavitt's first ground for relief was not barred by Stone. While Cavitt's first proposed ground for relief was based on the ineffective assistance of counsel related to the search warrant – thus being in essence a Sixth Amendment claim - the present ground does not mention ineffective assistance of counsel, rendering it exclusively a Fourth Amendment claim and therefore barred by Stone.

instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001).[7]

Analyzing the scope of "full and fair opportunity to litigate," the First Circuit held that it means "that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations." Id. at 9. Therefore, where "a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under Stone, to second-guess the accuracy of the state court's resolution of those claims." Id. Finally, the court clarified that "[t]he petitioner bears the burden of proving that his case fits within the contours of the exception." Id. at 8.

Cavitt does not address this issue. He does not mention Stone, or why his case would be an exception to its application. Because he bears burden of proving the exception, his failure to address the issue is a sufficient reason for the Court to deny relief on this ground. Even if Cavitt had sought to meet his burden, however, it is clear from the record that he had a full

_____

[7] The court also noted that the "exception survives the passage of the AEDPA," which took place twenty years after the Supreme Court's decision in Stone. Sanna, 265 F.3d at 8.

and fair opportunity to litigate his Fourth Amendment claim in state court.

In fact, the Massachusetts Supreme Judicial Court carefully addressed the issue of the identity of the informing witness and found that the judge did not err in denying Cavitt's motion to suppress the evidence derived from this information. Cavitt, 460 Mass. at 628-30. As an initial matter, Cavitt had the opportunity to present his arguments on this point to the trial judge and to have the trial judge decide this question on its merits. See id. at 628. Furthermore, the Supreme Judicial Court properly reviewed the trial judge's decision, laying out the standards for assessing the reliability of citizen informants. Id. at 628-29 (noting that, "[a]s a general matter, when assessing the reliability of citizens who report apparent violations of the law, we accord more weight to the reliability of those who are identified," but also that "the reliability of citizen informants who are identifiable, but may not have been identified, is deserving of greater consideration than that of truly anonymous sources" (internal quotation marks and citations omitted)). Finally, the court analyzed the facts of the case and concluded that "[t]his citizen informant placed her anonymity sufficiently at risk such that her reliability was properly accorded greater weight than that of an unknown and truly anonymous source." Id. at 630. Specifically, the court

stressed that "she presented herself to the police in person[,] she provided her address, which officers could verify, and she told the detectives about her child," thus making her identifiable.  Id.  The court also concluded that "[t]he information provided by the citizen informant was detailed" and "corroborated by police knowledge of the [crime] and [Cavitt]'s subsequent escape from the scene."  Id.  Consequently, the court held that the motion to suppress had been properly denied.  Id.

This is a sufficient showing for the purposes of Stone that Cavitt had a full and fair opportunity to litigate his Fourth Amendment claim before the state courts.  Accordingly, even if this Court believed that the state court had decided the issue wrongly – which this Court does not - habeas relief could not follow on this ground.  See Sanna, 265 F.3d at 9 ("Hence, the mistaken outcome of a state court suppression hearing, standing alone, cannot be treated as a denial of the opportunity fully and fairly to litigate a Fourth Amendment claim (and, thus, cannot open the door to federal habeas review).").

### 3.   Ground Three

In his third ground for relief, Cavitt claims that the trial "[j]udge erred in denying [a] motion to suppress a photographic identification made [by] a 13 year-old witness that was a result of undue suggestion by police."  Pet. 9.  While

Cavitt's argument is not entirely clear,[8] he essentially attacks

the identification provided by Antonio Vergara ("Vergara").[9]

Because of the lack of argument in Cavitt's memorandum on

this ground, and the opaque argument laid out on his initial

petition, this Court relies on the discussion of the motion to

suppress evidence as framed by the Massachusetts Supreme

Judicial Court. According to the state court,

> Vergara viewed a series of photographs on a computer
> terminal at the detective bureau in an effort to
> identify the individual he had seen fleeing from the
> [supermarket]. After he finished looking through the
> photographs, Vergara got up and, as he was being led
> out of the detective bureau, looked over at a computer
> terminal being viewed by [another witness], saw a
> photograph of [Cavitt] which happened to be on the
> screen, and said, "That looks like the guy that I
> saw."

Cavitt, 460 Mass. at 631. Cavitt claimed that this

identification was akin to a "one-on-one show-up" and thus

---

[8] Unlike grounds one and two, grounds three and four were
not discussed in Cavitt's memorandum in support of his petition
due to his limited access to research material. Cavitt's Mem.
11. As a result, this Court can only rely on Cavitt's initial
petition to grasp the meaning of his argument.

[9] During the state court proceedings, Cavitt filed a motion
to suppress two photographic identifications: one made by John
Ryan on May 6, 2006, and another made by Vergara on May 5, 2006.
Before the Massachusetts Supreme Judicial Court, however, Cavitt
attacked the denial only as to Vergara, and that court ruled
that the trial judge had properly denied the motion to suppress
the identification. Cavitt, 460 Mass. at 631-33. In the
present habeas petition, Cavitt again attacks solely the
identification made by Vergara, though he briefly addresses the
other identification as well. Pet. 9-10.

constituted undue police suggestion, but the trial judge considered the identification to be "purely inadvertent."  Id.

The standard of review in claims of this nature is governed by Simmons v. United States, 390 U.S. 377 (1968).  Under Simmons, Cavitt must show: "(1) that the identification procedure was impermissibly suggestive and (2) that in the totality of the circumstances, a likelihood of irreparable misidentification exists."  DeLong v. Brady, 723 F. Supp. 2d 376, 394 (D. Mass. 2010); see also Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977) (noting that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature" and finding that evidence should not be suppressed where a suggestive identification procedure did not, under the totality of the circumstances, create a substantial likelihood of irreparable misidentification).

In the present case, the Massachusetts Supreme Judicial Court relied on its own precedent and applied a standard of review similar to the one established by the Supreme Court in Simmons.  See Cavitt, 460 Mass. at 632 ("For a motion to suppress a photographic identification to succeed, 'the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to

irreparable misidentification as to deny the defendant due
process of law.'" (quoting Commonwealth v. Miles, 420 Mass. 67,
77 (1995))).[10]  Applying the law to the case, the state court
observed that:

---

[10] Massachusetts law is in fact more favorable to a
defendant than is federal law: the simple fact that the
identification was made pursuant to an unnecessarily suggestive
procedure suffices for suppression of the evidence.  In other
words, under Massachusetts law, a defendant must only show the
first of the two Simmons prongs.  See Commonwealth v. Walker,
460 Mass. 590, 599 n.13 (2011) ("Where the defendant satisfies
this burden, the out-of-court identification is per se excluded
as a violation of the defendant's right to due process under
art. 12 of the Massachusetts Declaration of Rights.  In
contrast, under the Fourteenth Amendment to the United States
Constitution, a motion judge must apply a two-step analysis to
the question of admissibility.  The judge asks first whether the
eyewitness identification was obtained by a police procedure
that was unnecessarily suggestive.  If it was, the judge then
asks whether, notwithstanding the unnecessarily suggestive
procedure, the eyewitness identification was reliable under the
totality of the circumstances.  Because reliability is the
linchpin, the identification, if found reliable, is admissible
even where obtained through an unnecessarily suggestive
procedure.  The United States Supreme Court expressly rejected
the per se rule of exclusion as going too far since its
application automatically and peremptorily, and without
consideration of alleviating factors, keeps evidence from the
jury that is reliable and relevant. . . . [T]he standard for the
admissibility of an identification under the Massachusetts
Constitution is more favorable to a defendant than the standard
under the United States Constitution . . . .") (internal
citations omitted) (internal quotation marks omitted).
    Because the Massachusetts standard is more protective of
defendants than is the its federal counterpart, then, a ruling
that identification procedures complied with the state standard
means that the procedures necessarily complied with the federal
constitutional standard as well.  Accordingly, this Court may
still look to the Supreme Judicial Court's state law analysis as
it evaluates the merits of Cavitt's federal constitutional claim
in this habeas proceeding.

Here, the totality of the circumstances do not show by a preponderance of the evidence that Vergara's identification of [Cavitt]'s photograph was the product of unnecessarily suggestive police procedures. As defense counsel acknowledged at the suppression hearing, nothing was said or done by the police to direct Vergara's attention to the computer screen that was being viewed by [another witness]. Vergara simply looked around as he exited the detective bureau and observed [Cavitt]'s photograph on [the other witness]'s screen. As defense counsel further acknowledged, there was no evidence that Vergara overheard [the other witness] making any comments with regard to [Cavitt]'s photograph, which could have tainted Vergara's identification. Vergara's identification of [Cavitt]'s photograph plainly did not occur in circumstances that were unnecessarily suggestive.

Contrary to [Cavitt]'s assertion, Vergara's observation of [Cavitt]'s photograph on the computer screen being viewed by [the other witness] was not a one-on-one showup identification. It was more akin to a display of a series of photographs, given that Vergara had been viewing thousands of photographs on his own computer screen just minutes before leaving the detective bureau. We have concluded that Vergara's identification of [Cavitt]'s photograph was not the product of unnecessarily suggestive police procedures that were conducive to a mistaken identification. Accordingly, [Cavitt]'s motion to suppress photographic identifications was properly denied.

Id. at 632-33.

Cavitt cannot demonstrate that the state court's decision was contrary to clearly established federal law, or involved an unreasonable application thereof. Indeed, the state court's conclusion regarding the denial of the motion to suppress is perfectly in tune with the Simmons standard. Accordingly, Cavitt also fails on his third ground for habeas relief.

### 4. Ground Four

In his fourth and final ground for relief, Cavitt claims
that the trial "[j]udge erred in allowing introduction of
inconclusive [DNA] evidence [without] the requisite explanatory
statistical support." Pet. 11. Once more, because Cavitt's
memorandum is silent on this ground, the Court can rely solely
on the cursory and confusing reasoning laid out by Cavitt in his
petition. There, Cavitt seems to attack the introduction of
inconclusive DNA evidence, which would "simply confuse[] that
average layman who [sits] on a jury." Id. Going back to the
Massachusetts Supreme Judicial Court's opinion, it seems that
Cavitt attacks the introduction of inconclusive DNA evidence
from a gold necklace found in the victims' apartment. Cavitt,
460 Mass. at 633.

Saba raises a procedural issue that would prevent the
analysis of this ground. According to Saba, Cavitt's claim is
procedurally defaulted, because failure to comply with
Massachusetts's contemporaneous objection rule by "object[ing]
at trial to the introduction of 'inconclusive' DNA evidence"
constitutes an independent and adequate state ground for the
Commonwealth's continued custody of Cavitt. Saba's Opp'n 29.

When a state court decision rejecting a defendant's federal
constitutional claim also rests on an independent and adequate
state ground, a federal court cannot grant habeas relief for

that particular federal claim.  <u>Ainooson</u> v. <u>Gelb</u>, 973 F. Supp.
2d 105, 114 (D. Mass. 2013) (citing <u>Coleman</u> v. <u>Thompson</u>, 501
U.S. 722 (1991)).  "Habeas review is barred regardless of
whether the state law ground is procedural or substantive."  <u>Id.</u>
When the relevant state law reason for denying relief is a
defendant's failure to object at the proper time, such a failure
constitutes a procedural default barring federal habeas relief
"so long as the state court consistently applies its
contemporaneous objection rule and has not waived it in the
particular case by basing the decision on some other ground."
<u>Id.</u> (internal quotation marks omitted).  Massachusetts has
routinely enforced its contemporaneous objection rule.  <u>Id.</u>

Courts may sometimes provide limited review of a claim
without waiving it as a procedural default.  In reviewing
Cavitt's claim on this issue, the Supreme Judicial Court applied
a miscarriage of justice standard; the First Circuit has
repeatedly held that this form of review does not constitute a
waiver of a default for federal habeas purposes.  <u>See</u> <u>Burks</u> v.
<u>Dubois</u>, 55 F.3d 712, 716 n.2 (1st Cir. 1995).

In the present case, the Massachusetts Supreme Judicial
Court noted Cavitt's failure to object at trial to the
introduction of inconclusive DNA evidence and proceeded to a
review of the claim under the miscarriage of justice standard.
<u>Cavitt</u>, 460 Mass. at 635 ("[T]he testimony . . . regarding the

inconclusive DNA evidence obtained from the gold necklace should not have been admitted. Given that there was no objection from defense counsel, we consider whether the admission of such testimony created a substantial likelihood of a miscarriage of justice."). In the end, the state court ruled that "the DNA testimony in the present case was wholly neutral," and that "statistical evidence to explain the import of this particular DNA testimony would [thus] not come into play." Id. at 635-36. Accordingly, the court concluded that "the error in admitting the inconclusive DNA evidence relating to the necklace would not have influenced the jury's conclusion, was not sufficient to demonstrate ineffective assistance of counsel, and did not create a substantial likelihood of a miscarriage of justice." Id. at 636.

Therefore, the Massachusetts Supreme Judicial Court relied on an independent and adequate state ground when it: (1) ruled that Cavitt had defaulted this claim by failing to object to the introduction of this evidence at trial and (2) briefly analyzed those forfeited claims only to determine if there was a substantial risk of a miscarriage of justice. See Ainooson, 973 F. Supp. 2d at 115. Accordingly, this Court is prevented from reviewing the fourth ground of relief sought by Cavitt.[11]

---

[11] As a final note, the Court observes that Cavitt could have attempted to excuse his procedural default by showing

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Cavitt's petition for a writ of habeas corpus, ECF No. 6.

**SO ORDERED.**

                                    _/s/ William G. Young_
                                    WILLIAM G. YOUNG
                                    DISTRICT JUDGE

---

ineffective assistance of counsel.  <u>See</u> <u>Ainooson</u>, 973 F. Supp. 2d at 116.  Although Cavitt argued such an excuse before the Massachusetts Supreme Judicial Court, <u>Cavitt</u>, 460 Mass. at 633, he did not pursue it in the present habeas petition.  Had he done so, however, this Court could not find for him.  As the Massachusetts Supreme Judicial Court held, there was no prejudice to Cavitt from the introduction of the inconclusive DNA evidence, because the neutrality of the evidence meant it could not have affected the jury's conclusion.  <u>Id.</u> at 635-36. As a result, the fact that counsel did not pursue suppression of the evidence does not amount to ineffective assistance, as defined in <u>Strickland</u> and discussed supra.